IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| AICCO, INC., | } |
| | } |
|     *Plaintiff*, | } |
| v. | }   Civil Action No. H-08-2938 |
| | } |
| TRADESTAR CONSTRUCTION SERVICES, INC., | } |
| | } |
|     *Defendant*. | } |

**OPINION AND ORDER**

Pending before the Court is Plaintiff AICCO, Inc.'s (AICCO) summary judgment motion (Doc. 11). Upon review and consideration of this document, Defendant Tradestar Construction Services, Inc.'s (Tradestar) limited response thereto (Doc. 16), the entire record in this cause, and the relevant legal authority, the Court finds that this motion should be granted-in-part and denied-in-part.

I.         Background and Relevant Facts

Plaintiff AICCO initiated suit against Defendant Tradestar on October 1, 2008, for breach of contract. (Pl.'s Compl., Doc. 1). Defendant Tradestar timely answered and filed a third-party complaint against Third-Party Defendant American Home Assurance Company (AHAC).[1] (Docs. 5 & 6). Thereafter, AICCO filed a motion for summary judgment and Tradestar filed a motion for a continuance of the submission date until it was able to complete the discovery required to properly respond to AICCO's arguments. (Docs. 11, 12 & 14).

---

[1] In its Order on June 24, 2009, the Court dismissed without prejudice the third-party action against AHAC. (Doc. 23).

Tradestar also filed a limited response brief subject to its motion for a continuance (Doc. 16).[2] Before addressing the merits of AICCO's claim, the Court will outline the terms of the contract that is at the heart of this dispute.

On July 9, 2007, Plaintiff AICCO, as the lender, and Defendant Tradestar, as the borrower and insured, entered into the Premium Finance Agreement, Disclosure Statement, and Security Agreement (the PFA). (Stratton Aff., Doc. 12 Ex. 1 at ¶ 4; Doc. 12 Ex. 2). Pursuant to the PFA, Tradestar made a down payment in the amount of $71,832.58 as partial payment of the premiums for a full year of coverage under a general liability policy issued by United Specialty Insurance Company, effective June 30, 2007, (the Liability Policy) and a workers' compensation policy issued by AHAC, effective July 1, 2007, (the WC Policy) (collectively, the Policies). (Stratton Aff. at ¶ 4; Doc. 12 Ex. 2). Also, in accordance with the terms of the PFA, Tradestar borrowed and AICCO paid the balance of the premiums for the Policies, $407,105.42, to the broker, Hibernia Insurance.[3] (Stratton Aff. at ¶ 5; Doc. 12 Exs. 2, 8). Moreover, Tradestar, as the borrower and insured, promised to pay AICCO, the lender, ten monthly payments of $42,216.97 beginning on July 30, 2007, and ending on May 1, 2008. (Stratton Aff. at ¶ 6; Doc. 12 Ex. 2).

Tradestar timely paid the first three monthly installments on August 1, September 5, and October 3, 2007. (Stratton Aff. at ¶ 7). Tradestar, however, failed to pay the November

---

[2] In its request for entry of default and motion for default judgment (Docs. 27 & 28), AICCO argues that Tradestar did not intend for the limited response it filed to be effective if the Court granted the motion for a continuance of the submission date. AICCO further asserts that because Tradestar filed its limited response "subject to" the motion for continuance and then subsequently failed to file a response after the Court granted the motion for continuance, the summary judgment motion should be treated as unopposed. Despite this argument, the Court shall construe Tradestar's limited response that was filed subject to its motion for a continuance of the submission date as a response in opposition to AICCO's summary judgment motion and, as such, will consider the arguments set forth therein.

[3] In July 2007, Hub International, the broker named in the PFA, purchased Hibernia Insurance. (Stratton Aff. at ¶ 5; Doc. 12 Ex. 2).

installment on time. (*Id.*). As such, on November 12, 2007, AICCO assessed a $500 late fee on Tradestar, as authorized by paragraph 14 of the PFA.[4] (Stratton Aff. at ¶ 7). As a result of Tradestar's default and pursuant to paragraph 3 of the PFA, AICCO mailed Tradestar notices of intent to cancel on November 13, 2007.[5] (Stratton Aff. at ¶ 9; Doc. 12 Exs. 2-3). Tradestar failed to cure its payment default within the ten-day cure period, and, as such, AICCO issued cancellation notices regarding the Policies effective as of November 16, 2007. (Stratton Aff. at ¶ 10; Doc. 12 Ex. 4). According to the Notice of Cancellation dated November 26, 2007, the unpaid balance on Tradestar's account was $295,518.79.[6]

No payments were made on AICCO's account from October 3, 1997, until March 11, 2008, at which time unearned premiums in the amount of $62,898.15 were refunded. (Stratton Aff. at ¶ 7). On July 15, 2008, AICCO received a $10,000 payment, and, on August 20, 2008, it received $39,120 in returned premiums. (Stratton Aff. at ¶ 14). As such, the total unpaid balance was reduced by $112,018.15.

---

[4] Paragraph 14 of the PFA states, in relevant part, "[u]pon default in payment of any installments for not less than five days (or such greater number of days required by applicable law), insured agrees to pay a late charge in accordance with applicable law. In no event shall such late charge exceed a maximum of 5% of such installment[.]" (Doc. 12 Ex. 2 at 2).

[5] Paragraph 3 of the PFA states, in relevant part,

> [a]fter the occurrence of a default in the payment of any money due the LENDER or a default consisting of a transfer to a third party of any of the scheduled policies, LENDER may request cancellation of the insurance policies listed in the schedule upon expiration of 10 days written notice of intent to cancel . . . provided said default is not cured within such period, and LENDER may proceed to collect the entire unpaid balance due hereunder or any part thereof by appropriate legal proceedings. If any default results in the cancellation of the Policy, insured agrees to pay a cancellation charge in accordance with applicable law[.]

(Doc. 12 Ex. 2 at 2).

[6] The Court notes that there is a discrepancy between the unpaid balance in the Notices of Cancellation attached as Exhibit 4 to Plaintiff's motion for summary judgment ($295,518.79) and the unpaid balance it provides in its motion and affidavit in support thereof ($291,191.07 which does not include the $500.00 late fee). (Stratton Aff. at ¶ 11; Doc. 12 Ex. 4). This number is of significance to the damages calculation in this matter, as it is the principal amount on which the default interest is calculated.

II.        Legal Standard on Summary Judgment

A party moving for summary judgment must inform the court of the motion's basis and identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The substantive law governing the suit identifies the essential elements of the claims at issue and therefore indicates which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A plaintiff moving for summary judgment must satisfy its burden by submitting proof that establishes all elements of its cause of action as a matter of law. *San Pedro v. U.S.*, 79 F.3d 1065, 1068 (11th Cir. 1996). Once the movant makes this showing, the non-moving party must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 323-24. The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Indust. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citing *U.S. v. Diebold, Inc.,* 369 U.S. 654, 655 (1962)). Instead, the non-moving party must produce evidence upon which a jury could reasonably base a verdict in its favor. *Anderson*, 477 U.S. at 248. The non-moving party must "go beyond the pleadings and by [its] own affidavits or by depositions, answers to interrogatories and admissions on file, designate specific facts that show there is a genuine issue for trial." *Webb v. Cardiothoracic Surgery Assoc. of North Texas, P.A.*, 139 F.3d 532, 536 (5th Cir. 1998). Unsubstantiated and subjective beliefs and conclusory allegations and opinions are not competent summary judgment evidence. *Grimes v. Texas Dept. of Mental Health and Mental Retardation*, 102 F.3d 137, 139-40 (5th Cir. 1996); *Forsyth v.*

*Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992), *cert. denied*, 506 U.S. 825 (1992). Nor are pleadings summary judgment evidence. *Wallace v. Texas Tech University*, 80 F.3d 1042, 1046 (5th Cir. 1996) (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(*en banc*)). The non-moving party cannot discharge its burden by offering vague allegations and legal conclusions. *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992); *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 889 (1990). Nor is the district court required by Rule 56 to sift through the record in search of evidence to support a party's opposition to summary judgment. *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir.), *cert. denied*, 506 U.S. 832 (1992)).

All reasonable inferences must be drawn in favor of the non-moving party. *Matsushita*, 475 U.S. at 587-88. In reviewing evidence favorable to the party opposing a motion for summary judgment, a court should be more lenient in allowing evidence that is admissible, though it may not be in admissible form. *See Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc.,* 831 F.2d 77, 80 (5th Cir. 1988). Furthermore, the party opposing a motion for summary judgment does not need to present additional evidence, but may identify genuine issues of fact extant in the summary judgment evidence produced by the moving party. *Isquith v. Middle South Utilities, Inc.*, 847 F.2d 186, 198-200 (5th Cir. 1988). The non-moving party may also identify evidentiary documents already in the record that establish specific facts showing the existence of a genuine issue. *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990).

A non-moving party's failure to respond does not automatically entitle the movant to a "default" summary judgment. *Lewis v. Continental Airlines, Inc.*, 80 F. Supp. 2d 686, 694

(S.D. Tex. 1999); *Taylor v. Dallas County Hosp. Dist.*, 959 F. Supp. 373, 376 (N.D. Tex. 1996). "A motion for summary judgment cannot be granted simply because there is no opposition, even if failure to oppose violated a local rule. The movant has the burden of establishing the absence of a genuine issue of material fact and, unless he has done so, the court may not grant the motion, regardless of whether any response was filed." *Lewis*, 80 F. Supp. 2d at 694 (quoting *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 362 n.3 (5th Cir. 1995) (citing *Hibernia Nat'l Bank*, 776 F.2d 1277, 1279 (5th Cir. 1985))). The district court may, however, accept as undisputed the facts set forth in support of the motion for summary judgment to the extent it is unopposed. *Id.* (citing *Eversley v. MBank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988); *Rayha v. United Parcel Serv., Inc.*, 940 F. Supp. 1066, 1068 (S.D. Tex. 1996)).

III.     Discussion

Plaintiff AICCO's complaint alleges only one cause of action against Defendant Tradestar, for breach of the PFA. Specifically, AICCO contends that Tradestar breached the PFA by failing to pay seven of the ten installments due under the contract. In its limited response, Tradestar raises issues with respect to the choice of law, New Mexico or Texas, that applies to this dispute, whether AICCO first sought repayment of unearned premiums from AHAC, and the amount of money allegedly owed by Tradestar.

The PFA states that "[t]he law of the State of the Insured's residence shall govern this Agreement, except, for Colorado, Hawaii, Idaho and Wyoming insureds this contract is governed by the laws of the State of New York." (Doc. 12 Ex. 2 at 2). Tradestar's address on the PFA is 3 River Way, Suite 1500, Houston, Texas 77056. (*Id.*). However, Tradestar contends that it is a resident of New Mexico because that is the state in which it is incorporated. With

respect to the issue of liability, the question of Tradestar's residence is insignificant because the elements of a breach of contract cause of action in each jurisdiction are the same.

"The essential elements of a breach of contract claim are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009) (quoting *Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex. App.—Houston [14th Dist.] 2005, pet. denied)). *See also McCasland v. Prather*, 585 P.2d 336, 338 (N.M. App. 1978) (citation omitted) ("Generally, a complaint on breach of contract must allege: (1) the existence of a valid and binding contract; (2) the plaintiff's compliance with the contract and his performance of the obligations under it; (3) a general averment of the performance of any condition precedent; and (4) damages suffered as a result of defendant's breach.").

The parties do not dispute the existence of a valid contract or the fact that AICCO performed under the terms of the PFA. It is clear from the evidence presented that Tradestar failed to pay seven of the ten premiums due under the PFA and that, as a result, AICCO has sustained damages. Accordingly, the Court finds that Tradestar has breached the PFA under both New Mexico and Texas law and, as such, shall grant summary judgment on liability.

However, with respect to the issue of damages, the Court must deny summary judgment on several grounds. First, it is unclear from the evidence presented whether Tradestar was a resident of New Mexico or Texas when it entered into the PFA. Although Tradestar was incorporated in New Mexico, there is a material question of fact with respect to the issue of where it maintains its principal office or place of business. Although the issue of Tradestar's residence does not affect the Court's liability determination, it does affect the damages

calculation because New Mexico and Texas law differs on the issue of interest rates on judgments.  *See* TEX. FIN. CODE § 302.001; N.M. STAT. § 56-8-4.  Second, as the Court acknowledged earlier, there is a discrepancy between the unpaid balance in the Notices of Cancellation attached as Exhibit 4 to Plaintiff's motion for summary judgment and the unpaid balance it provides in its motion and affidavit in support thereof.  Third, as Tradestar argues, AICCO must first recover all unearned premiums or demonstrate that all unearned premiums have been refunded before seeking recovery from Tradestar.  While AICCO provides evidence that it received unearned premiums in the amounts of $62,898.15 and $39,120 on March 11, 2008, and August 20, 2008, respectively, it is unclear whether this represents the total amount of unearned premiums due to AICCO.  Lastly, although the PFA allows for the payment of attorneys' fees and expenses, AICCO has failed to submit the documents required to support such a request.

IV.        Conclusion

As such, the Court hereby ORDERS that AICCO's summary judgment motion (Doc. 11) is GRANTED-IN-PART and DENIED-IN-PART, without prejudice..

The Court further ORDERS that Plaintiff AICCO file a supplemental brief addressing the damages issue within THIRTY (30) DAYS of the issuance of this ORDER.  Defendant Tradestar shall have FIFTEEN (15) DAYS in which to file its response to the supplemental brief.

The Court further ORDERS that Docket Call in this matter is VACATED and will be reset, if necessary, after the Court addresses the supplemental briefs on damages.

- 9 -

SIGNED at Houston, Texas, this 11th day of November, 2009.

                                         MELINDA HARMON
                                  UNITED STATES DISTRICT JUDGE